LETTS, Judge.
This case concerns a church which leased television equipment from RCA and subleased said equipment to a T.V. station which later filed for bankruptcy. The trial court held inter alia that the original lessee church was not liable for the remaining unpaid rental period occurring after the sublessee T.V. station filed for bankruptcy. The trial court further held that the provisions in the original lease agreement relative to the monthly payment of sums towards an option were ambiguous and therefore, unenforceable by the lessor. We reverse both findings.
It is true that the lessor, RCA, knew, at the time the lease was entered into, that the church proposed to sublease the television broadcasting equipment to the T.V. station. Nonetheless, the T.V. station was to pay its rent to the church not to RCA and the church remained responsible for all rental payments to RCA.
Generally speaking, the assignment of a lease by a lessee does not relieve the lessee of its obligations thereunder. Craig v. 60 Minute of Miami, Inc., 267 So.2d 94 (Fla.3d DCA 1972). The liability of a lessee for rent accruing after he makes an assignment of the lease is principally dependent on whether he expressly covenanted to pay rent; if he did, his liability continues. 20 Fla.Jur. Landlord and Tenant Section 68. The church did so expressly covenant. This being so, we hold that the advent of bankruptcy made no difference to the continuing rental obligations owed by the church to RCA.
We must also resolve the second issue against the church. RCA is a major corporation and that being so, it is tempting to find excuse for any church. However, we see no ambiguity under the original *216 lease agreement which quite clearly provided, not only that $4,000 per month be paid as basic rent, but also that an additional $4,000 per month be paid during the entire lease term for the privilege of a granted (not to be granted in the future) option to buy the leased equipment. The church maintains that the $4,000 monthly payment on the option, was conditioned upon the church activating that option by making a $25,000 down payment which it never did. Accordingly, the church reasons that because it didn't pay the $25,000, the option lapsed and consequently so did the additional monthly $4,000 payable thereafter. We cannot agree. The lease itself clearly and unequivocally foresaw such an eventuality and we note the following language:
Should Allapattah exercise the option, the aforesaid sum of TWENTY-FIVE THOUSAND DOLLARS ($25,000) shall be applied to the purchase price of the property and, on receipt of the balance of the purchase price by RCA, together with a sum equal to any new or applicable unpaid sales and use taxes, RCA will transfer title of property to Allapattah and will deliver, on Allapattah’s written request, written evidence of the transfer of said title.
Should the option not be so exercised (or should this Lease be terminated by the occurrence of any event of default or otherwise), Allapattah shall return the property as provided for in paragraph 9 hereof and shall pay, in addition to the rentals payable and the aforesaid amount of TWENTY-FIVE THOUSAND DOLLARS ($25,000), and as additional consideration for the grant of this option, a sum to be calculated by multiplying the sum of FOUR THOUSAND DOLLARS ($4,000) times the number of calendar months or portions thereof transpired from the beginning of the Lease term until the date property is returned to the possession, dominion and control of RCA. The sums so paid shall not be regarded as a penalty or forfeiture, but as consideration for the grant of the option.
What could be clearer? This was not an option to purchase an option, the moneys were due in any event. Moreover, there can be no doubt that the church was well aware of its continuing total obligations under the lease with RCA because its sublease (and other accompanying complicated agreements) passed on to the T.V. station, not merely the $4,000 rental per month, but also the entire $8,000 figure (and the down payments) and also gave to the church free time for it to air its religious programs. Finally, it is conceded that a mere $4,000 per month would be far below the fair rental value of the leased equipment. All this being so, we must reverse the trial judge and remand this cause for the entry of a judgment in favor of RCA in accordance with the terms of the original lease, less any sums already paid thereunder by the church.
The remaining points on appeal are determined to be moot or without merit.
REVERSED AND REMANDED.
BERANEK, J., and SCHWARTZ, ALAN R., Associate Judge, concur.